```
 1                  UNITED STATES DISTRICT COURT
                    WESTERN DISTRICT OF TEXAS
 2                       AUSTIN DIVISION

 3   UNITED STATES OF AMERICA ) Docket No. A 08-CR-92(1) SS
                              )
 4   vs.                      ) Austin, Texas
                              )
 5   ARTHUR LONGORIA          ) August 12, 2008

 6

                    TRANSCRIPT OF TRIAL ON THE MERITS
 7                  BEFORE THE HONORABLE SAM SPARKS
                          Volume 2 of 2
 8

 9   APPEARANCES:

10   For the United States:      Ms. Rrachelle R. Douglas
                                 Mr. Grant Sparks
11                               Assistant U.S. Attorneys
                                 816 Congress Avenue, Suite 1000
12                               Austin, Texas 78701

13

14   For the Defendant:         Mr. Stephen M. Orr
                                 Orr & Olavson
15                               804 Rio Grande Street
                                 Austin, Texas 78701
16

17

18   Court Reporter:            Ms. Lily Iva Reznik, RPR, CRR
                                 200 W. 8th Street
19                               Austin, Texas 78701
                                 (512)916-5564
20

21

22

23

24

25   Proceedings recorded by mechanical stenography, transcript
     produced by computer.
```

1                          **I N D E X**

2                          <u>Direct</u>    <u>Cross</u>      <u>Redirect</u>   <u>Recross</u>
   <u>Witnesses</u>:

3

4  Belinda D. Olivo              5              10

5  Sophia Martinez       11

6

7                          **E X H I B I T S**

8                                        <u>Offered</u>     <u>Admitted</u>

9  <u>Government's</u>

10  (None.)

11

12  <u>Defendant's</u>

13  (None.)

14

15

16

17

18

19

20

21

22

23

24

25

| | | |
|---|---|---|
| 09:00:08 | 1 | THE COURT:  All right.  I've reviewed the defendant's |
| 09:00:12 | 2 | memorandum.  I did some thinking about it last night.  And what I |
| 09:00:17 | 3 | will allow, of course, on the cross-examination is you can ask |
| 09:00:21 | 4 | Ms. Olivo if she'd ever seen the gun they kept under the |
| 09:00:26 | 5 | mattresses, if they'd ever seen the shotgun that was in the safe, |
| 09:00:31 | 6 | or ever seen the shotgun in the closet, but limit your |
| 09:00:36 | 7 | cross-examination to the guns. |
| 09:00:38 | 8 | MS. DOUGLAS:  Yes, sir. |
| 09:00:40 | 9 | THE COURT:  All right.  We're one juror short, so we're |
| 09:00:52 | 10 | waiting for a few minutes. |
| 09:01:49 | 11 | All right.  Counsel, the jury's here.  Are you ready? |
| 09:01:52 | 12 | MS. DOUGLAS:  Yes, your Honor. |
| 09:01:53 | 13 | THE COURT:  All right. |
| 09:01:59 | 14 | (Jury present.) |
| 09:03:10 | 15 | THE COURT:  Members of the jury, those of us that work |
| 09:03:18 | 16 | in the building -- it was built in 1931 -- are just thankful for |
| 09:03:21 | 17 | the days that we have air conditioning.  And we have learned, |
| 09:03:25 | 18 | over the years, never to ask them to turn it down because usually |
| 09:03:29 | 19 | that ends up off.  And this part of the building is the newest |
| 09:03:38 | 20 | part, redone 1995 for this courtroom.  It's a great courtroom. |
| 09:03:45 | 21 | Much better than the other courtrooms that were built many, many |
| 09:03:48 | 22 | years ago with acoustics and that type of thing. |
| 09:03:50 | 23 | But these columns, I've tried to get the architects to |
| 09:03:55 | 24 | take the columns out so that I could -- I can't see all the way |
| 09:03:58 | 25 | down to the folks there and they can't see back, but that's the |

09:04:02  1  way construction was in those days.  And they assure me that if

09:04:06  2  we remove the column, the building would fall down.  So the first

09:04:12  3  day of our new opening of the courtroom, we had a full audience,

09:04:19  4  all of the jurors here, many lawyers were going to select a very

09:04:25  5  large jury for a multi-week case.  And right in the middle of the

09:04:33  6  presentation, Judge Nowlin, whose office is right above us,

09:04:38  7  flushed his commode, and we didn't know it but all of the

09:04:44  8  plumbing there came right down the middle of this column.  So

09:04:51  9  that we could do something about.  We rerouted the plumbing.  But

09:04:56  10  for a while, every time somebody flushed the commode upstairs on

09:05:00  11  2, we had to stop.  So air conditioning and being cool is not

09:05:05  12  bad.  Now, one of these days, I want to find out why I have to

09:05:12  13  watch an hour of each volleyball and get swimming.  I don't guess

09:05:17  14  I'll ever get that response.

09:05:20  15       Since we met yesterday, has anyone attempted to talk to

09:05:24  16  any of you about this case?

09:05:26  17       JURORS:  No.

09:05:26  18       THE COURT:  Have you talked to anybody about the case?

09:05:28  19       JURORS:  No.

09:05:29  20       THE COURT:  And have you learned anything at all about

09:05:32  21  the case, outside the presence of one another and this courtroom?

09:05:34  22       JURORS:  No.

09:05:35  23       THE COURT:  All right.  Thank you.  Show negative

09:05:37  24  responses to all questions by all jurors.

09:05:42  25       Bring Ms. Olivo in, please.

| | | |
|---|---|---|
| 09:05:45 | 1 | MR. ORR:  We're doing that, your Honor. |
| 09:06:04 | 2 | THE COURT:  Ma'am, you understand that you're still |
| 09:06:06 | 3 | under oath? |
| 09:06:06 | 4 | THE WITNESS:  Okay. |
| 09:06:07 | 5 | THE COURT:  Ms. Douglas. |
| 09:06:08 | 6 | MS. DOUGLAS:  Thank you, your Honor. |
| 09:06:10 | 7 | CROSS-EXAMINATION |
| 09:06:10 | 8 | BY MS. DOUGLAS: |
| 09:06:11 | 9 | Q.   Ma'am, my name is Rrachelle Douglas, the person prosecuting |
| 09:06:14 | 10 | this case, along with Mr. Sparks, and it's my job to ask you a |
| 09:06:18 | 11 | few questions.  Will you be able to answer them for me? |
| 09:06:20 | 12 | A.   Sure. |
| 09:06:21 | 13 | Q.   Okay.  I know yesterday, you indicated that you're cousins |
| 09:06:26 | 14 | with Loretta? |
| 09:06:27 | 15 | A.   Yes. |
| 09:06:27 | 16 | Q.   Did you all grow up together? |
| 09:06:29 | 17 | A.   Yes. |
| 09:06:29 | 18 | Q.   Okay.  So would you consider yourselves to be close? |
| 09:06:32 | 19 | A.   Yes.  I grew up in Ohio, so, you know, we traveled from Ohio |
| 09:06:36 | 20 | to Texas.  So I would see her growing up. |
| 09:06:39 | 21 | Q.   Okay.  So how long have you been here in Texas? |
| 09:06:41 | 22 | A.   I've been in Austin for about 13 years, lived in Lubbock |
| 09:06:46 | 23 | probably for about seven to ten years. |
| 09:06:49 | 24 | Q.   Okay. |
| 09:06:49 | 25 | A.   So quite a long time. |

09:06:51  1  Q.   All right.  And once you've been here in Austin, did you

09:06:56  2  establish a more close relationship with Loretta?

09:07:00  3  A.   Well, a portion.  So once she moved down here, yeah, I would

09:07:06  4  say we got closer.

09:07:07  5  Q.   And give me an idea, like, how close you would say you are.

09:07:11  6  Do you see each other every day?  Do you talk on the phone every

09:07:14  7  day?  Like, what is the category of relationship?

09:07:16  8  A.   No, not every day, but I mean I was -- I guess probably for

09:07:22  9  about three months, I was going through a breakup and we would

09:07:26  10 talk quite a bit.  We talked almost every day.

09:07:28  11 Q.   Okay.

09:07:29  12 A.   But I was, you know, working a lot, too, and that's when I

09:07:33  13 would go to her house a lot and spend time with her, and she was

09:07:36  14 kind of there for me through the breakup that I was going

09:07:39  15 through.

09:07:39  16 Q.   Okay.  And let's try and narrow it down to the period of

09:07:44  17 time that we're more concerned with as it relates to Jonathan

09:07:48  18 Lee, because I know, yesterday, you said that you had met him

09:07:51  19 through Loretta; is that correct?

09:07:52  20 A.   Yes.

09:07:52  21 Q.   And I believe, yesterday, you said you had known him about

09:07:55  22 two years; is that correct?

09:07:57  23 A.   Yes.

09:07:57  24 Q.   Okay.  And so, during that two-year period where Mr. Lee was

09:08:02  25 in the company of Loretta and you had met him, how often would

09:08:06  1  you say you were seeing Loretta at that point in time?  I mean

09:08:09  2  did you go over to her house once a week, every day?

09:08:12  3  A.   Not every day.  Probably maybe once or twice a week.

09:08:15  4  Q.   Okay.  And did she do the same?  Did she come and frequent

09:08:18  5  your home?

09:08:19  6  A.   From time to time.

09:08:20  7  Q.   Okay.  But you were more frequently at her home?

09:08:23  8  A.   Yeah.

09:08:23  9  Q.   Now, during that two-year period, did they have a number of

09:08:27  10 residences?  And what I'm talking about is Arthur Longoria and

09:08:30  11 Loretta.

09:08:31  12 A.   As far as living?

09:08:32  13 Q.   Right.  Did they live in just one place that entire two

09:08:35  14 years?

09:08:36  15 A.   No.  There was a couple of different places that they lived.

09:08:39  16 Q.   Okay.  What was the most recent place that they lived in

09:08:43  17 prior to when this search warrant was executed on their home in

09:08:46  18 December 2007?  Where were they living, I'm sorry?

09:08:51  19 A.   At the time of the incident?

09:08:53  20 Q.   Yes, ma'am.

09:08:56  21 A.   I know it's off Slaughter.  I don't know what street it is.

09:09:00  22 Q.   Okay.

09:09:01  23 A.   But I know it's off Slaughter.

09:09:02  24 Q.   Would you disagree if I said it was Howellwood Way?

09:09:06  25 A.   No, I wouldn't, because I don't know exactly what street it

09:09:09  1    is, ma'am.

09:09:10  2    Q.    Okay.  But during the period of June to December of 2007,

09:09:14  3    you were visiting them at a residence that they were living at?

09:09:18  4    A.    Yes.

09:09:18  5    Q.    Okay.  And during that period of time, would you say you

09:09:22  6    were over there frequently, the one to two times a week you've

09:09:25  7    indicated?

09:09:25  8    A.    Yeah.  I would say I was probably over there two to three

09:09:30  9    times a week.

09:09:30  10   Q.    I believe on yesterday, you said during the two years that

09:09:34  11   you've known Mr. Lee, you'd seen him over at Loretta and Art's

09:09:37  12   house 30 times; is that correct?

09:09:39  13   A.    Yes.

09:09:39  14   Q.    Okay.  And do you have any reason to believe that Mr. Lee

09:09:44  15   only goes there when you're there?

09:09:45  16   A.    No.

09:09:46  17   Q.    Okay.  Do you have knowledge that he's there sometimes when

09:09:49  18   you're not there?

09:09:51  19   A.    Well, yeah, because I know at one time, I think him and his

09:09:54  20   girlfriend were actually staying there for a while.

09:09:56  21   Q.    Okay.

09:09:57  22   A.    I think they probably stayed there for maybe two or three

09:10:00  23   weeks.

09:10:00  24   Q.    Okay.  So if someone lived with someone, would you say that

09:10:03  25   that person was a pretty good friend?

09:10:05    1    A.    Yes.

09:10:05    2    Q.    Okay.  Now, would it surprise you if I told you Art in his

09:10:11    3    interrogation tape told the cops he had only seen Mr. Lee ten

09:10:15    4    times during the period of time he's known him?

09:10:19    5    A.    Yeah.  That wouldn't surprise me.

09:10:21    6    Q.    Because based on what you're saying, both of those things

09:10:24    7    can't be true, correct?

09:10:24    8    A.    Correct.

09:10:31    9    Q.    Now, yesterday, you told the jury that you had never seen

09:10:40   10    any firearms at the residence that Art and your cousin were

09:10:43   11    sharing; is that correct?

09:10:44   12    A.    Yes, ma'am.

09:10:45   13    Q.    Do you -- well, I'll ask specifically, were you ever

09:10:52   14    snooping around in their bedroom, the bedroom that they share?

09:10:55   15    A.    No.

09:10:55   16    Q.    Okay.  So it wouldn't surprise you that the firearm was

09:10:58   17    found in their bedroom underneath the mattress?

09:11:03   18    A.    I wouldn't -- I don't know.  I've never -- I mean I've never

09:11:07   19    known them to have guns.

09:11:08   20    Q.    But you're not disputing that that's why we're here, that

09:11:10   21    police found firearms there, right?

09:11:12   22    A.    No.

09:11:12   23    Q.    Because you don't -- you didn't go in there and look

09:11:14   24    underneath the mattress?

09:11:15   25    A.    No.  I didn't, no.

| | | |
|---|---|---|
| 09:11:16 | 1 | Q.   And would it surprise you that the police fond a shotgun in |
| 09:11:19 | 2 | the safe at Arthur Langoria's bedroom? |
| 09:11:23 | 3 | A.   It would surprise me.  Yes. |
| 09:11:24 | 4 | Q.   But you're not disputing that? |
| 09:11:25 | 5 | A.   No. |
| 09:11:26 | 6 | Q.   Pass the witness, your Honor. |

RE-DIRECT EXAMINATION

| | | |
|---|---|---|
| 09:11:30 | 7 | |
| 09:11:30 | 8 | BY MR. ORR: |
| 09:11:31 | 9 | Q.   Would it surprise you to learn that Mr. Jonathan Lee |
| 09:11:35 | 10 | indicated to the jury that he really didn't know Art, didn't know |
| 09:11:39 | 11 | who he was, didn't know him very well? |
| 09:11:41 | 12 | A.   Yes.  That would surprise me. |
| 09:11:43 | 13 | Q.   That he told the police he only knew him by Art? |
| 09:11:46 | 14 | A.   Yeah.  That definitely would surprise me. |
| 09:11:49 | 15 | Q.   Pass the witness. |
| 09:11:51 | 16 | MS. DOUGLAS:  Nothing further of this witness, your |
| 09:11:53 | 17 | Honor. |
| 09:11:55 | 18 | MR. ORR:  We call Sophia -- |
| 09:11:56 | 19 | THE COURT:  I get a turn. |
| 09:11:58 | 20 | MR. ORR:  I'm sorry. |
| 09:11:58 | 21 | THE COURT:  Lawyers get a turn, and every once in a |
| 09:12:01 | 22 | while, the Judge gets a turn.  May the witness be excused? |
| 09:12:03 | 23 | MS. DOUGLAS:  Yes, your Honor. |
| 09:12:05 | 24 | THE COURT:  You may be excused. |
| 09:12:06 | 25 | MR. ORR:  I apologize.  I'm just so eager, your Honor, |

| | | |
|---|---|---|
| 09:12:08 | 1 | which is unusual. |
| 09:12:09 | 2 | THE COURT:  Now you can be eager. |
| 09:12:12 | 3 | MR. ORR:  Yes, sir.  Sophia Martinez, please. |
| 09:12:34 | 4 | (Witness sworn.) |
| 09:12:58 | 5 | THE COURT:  If you'll tell us, please, ma'am, your full |
| 09:13:00 | 6 | name and spell your last name. |
| 09:13:02 | 7 | THE WITNESS:  Sophia Martinez, M-A-R-T-I-N-E-Z. |
| 09:13:11 | 8 | SOPHIA MARTINEZ, called by the Defendant, duly sworn. |
| 09:13:11 | 9 | DIRECT EXAMINATION |
| 09:13:12 | 10 | BY MR. ORR: |
| 09:13:12 | 11 | Q.   Where do you live, ma'am? |
| 09:13:13 | 12 | A.   Right now? |
| 09:13:14 | 13 | Q.   Well, okay.  Right now. |
| 09:13:16 | 14 | A.   Okay.  I'm staying here with my aunt in Austin. |
| 09:13:19 | 15 | Q.   Okay.  And where have you -- where did you live before that? |
| 09:13:22 | 16 | A.   In Lubbock. |
| 09:13:22 | 17 | Q.   Okay.  How long did you live in Lubbock? |
| 09:13:25 | 18 | A.   Well, I've been in Lubbock all my life. |
| 09:13:28 | 19 | Q.   Okay.  So you got lucky and you got to move to Austin? |
| 09:13:31 | 20 | A.   Yes, sir. |
| 09:13:31 | 21 | Q.   And did you -- are you related -- who's your daughter? |
| 09:13:38 | 22 | A.   Loretta. |
| 09:13:38 | 23 | Q.   Okay.  And do you know Art? |
| 09:13:41 | 24 | A.   Yes, I do. |
| 09:13:42 | 25 | Q.   Mr. Longoria, is that him sitting over here? |

| | | |
|---|---|---|
| 09:13:44 | 1 | A.   Yes, sir.  He's my son-in-law. |
| 09:13:45 | 2 | Q.   Okay.  And how long have you known Art? |
| 09:13:48 | 3 | A.   About five years. |
| 09:13:50 | 4 | Q.   Okay.  When is Loretta's birthday?  Do you know what day it |
| 09:13:54 | 5 | is? |
| 09:13:54 | 6 | A.   August the 29th. |
| 09:13:57 | 7 | Q.   Okay.  Somewhere in August.  August 29th? |
| 09:13:59 | 8 | A.   Yeah, August 29th. |
| 09:14:01 | 9 | Q.   Okay.  And do you know a guy named "Tater"? |
| 09:14:07 | 10 | A.   Yes, I do. |
| 09:14:08 | 11 | Q.   And do you know him -- is it -- that's Jonathan Lee? |
| 09:14:11 | 12 | A.   Yes, sir. |
| 09:14:12 | 13 | Q.   How do you know Mr. Jonathan Lee? |
| 09:14:14 | 14 | A.   Well, I met him through Art and Loretta. |
| 09:14:17 | 15 | Q.   Okay.  And do you know how long he's known Loretta? |
| 09:14:21 | 16 | A.   About three years. |
| 09:14:22 | 17 | Q.   Do you know how long he's known Art? |
| 09:14:25 | 18 | A.   About the same. |
| 09:14:25 | 19 | Q.   Okay.  So would you say that Art and/or Mr. Longoria and |
| 09:14:33 | 20 | your daughter and Mr. -- and "Tater" were friends? |
| 09:14:36 | 21 | A.   Yes, sir. |
| 09:14:37 | 22 | Q.   Okay.  Let me ask you this:  Has -- your daughter's never |
| 09:14:45 | 23 | been convicted of a felony, right? |
| 09:14:47 | 24 | A.   No, sir. |
| 09:14:48 | 25 | MS. DOUGLAS:  Objection, your Honor.  May we approach? |

| | | |
|---|---|---|
| 09:14:56 | 1 | (At the bench, on the record.) |
| 09:15:01 | 2 | MS. DOUGLAS:  Your Honor, he has the same ability to |
| 09:15:04 | 3 | run a criminal history since she's convicted of a theft, which I |
| 09:15:07 | 4 | think I'll be able to ask her about. |
| 09:15:09 | 5 | MR. ORR:  Of criminal theft? |
| 09:15:09 | 6 | MS. DOUGLAS:  Yeah. |
| 09:15:10 | 7 | MR. ORR:  I thought she didn't but -- okay.  I'll |
| 09:15:12 | 8 | withdraw the question. |
| 09:15:13 | 9 | THE COURT:  It's a little late to withdraw the |
| 09:15:14 | 10 | question.  But you certainly have the right to prove up the fact |
| 09:15:17 | 11 | that she has been.  All right. |
| 09:16:41 | 12 | MR. ORR:  Well, she's got a misdemeanor conviction. |
| 09:16:44 | 13 | MS. DOUGLAS:  A theft conviction. |
| 09:16:45 | 14 | MR. ORR:  That's not why I'm asking the question. |
| 09:16:47 | 15 | THE COURT:  Okay.  Question was, was she convicted of a |
| 09:16:52 | 16 | felony. |
| 09:16:53 | 17 | MS. DOUGLAS:  Yes, sir. |
| 09:16:53 | 18 | THE COURT:  He put her criminal history in the |
| 09:17:01 | 19 | question.  That doesn't mean that the person's wrong that she |
| 09:17:03 | 20 | just has a misdemeanor.  But you can ask her if she can answer. |
| 09:17:08 | 21 | MR. ORR:  I don't care about the misdemeanor.  That's |
| 09:17:09 | 22 | not my point.  I'll ask her about the misdemeanor.  I don't care |
| 09:17:12 | 23 | if she's been convicted of a misdemeanor.  That's not where I'm |
| 09:17:14 | 24 | going. |
| 09:17:15 | 25 | THE COURT:  Well, I understand where you're -- |

| | | |
|---|---|---|
| 09:17:16 | 1 | MR. ORR:  I have an idea but, you know, look, I'm doing |
| 09:17:20 | 2 | what I can do.  This is not, you know -- so. |
| 09:17:22 | 3 | THE COURT:  Let's just go back and play like we're |
| 09:17:25 | 4 | lawyers. |
| 09:17:25 | 5 | MS. DOUGLAS:  Yes, sir. |
| 09:17:26 | 6 | MR. ORR:  Yes, sir. |
| 09:17:31 | 7 | Q.   (BY MR. ORR) Okay.  To the best of your knowledge, Loretta |
| 09:17:34 | 8 | does not have a -- excuse me, Ms. Garcia does not have a felony |
| 09:17:38 | 9 | conviction, correct? |
| 09:17:39 | 10 | A.   Correct.  She don't. |
| 09:17:40 | 11 | Q.   But she may have a misdemeanor conviction for theft? |
| 09:17:43 | 12 | A.   She might have.  Yes. |
| 09:17:45 | 13 | Q.   I pass the witness.  Thank you, ma'am. |
| 09:17:55 | 14 | MR. SPARKS:  No questions, your Honor. |
| 09:17:56 | 15 | THE COURT:  All right.  May this witness be excused, |
| 09:17:58 | 16 | also, counsel? |
| 09:18:00 | 17 | MR. SPARKS:  Yes, your Honor. |
| 09:18:05 | 18 | THE COURT:  You may be excused, ma'am. |
| 09:18:06 | 19 | MR. ORR:  We rest, your Honor. |
| 09:18:15 | 20 | MS. DOUGLAS:  Government closes, your Honor. |
| 09:18:18 | 21 | THE COURT:  Members of the jury -- |
| 09:18:20 | 22 | MS. DOUGLAS:  We don't have any rebuttal. |
| 09:18:21 | 23 | THE COURT:  I am going to put you in the jury room for |
| 09:18:23 | 24 | just a moment. |
| 09:18:49 | 25 | (Jury not present.) |

| | | |
|---|---|---|
| 09:18:53 | 1 | THE COURT:  Does the government have any rebuttal? |
| 09:18:55 | 2 | MS. DOUGLAS:  No.  We do not, your Honor. |
| 09:18:56 | 3 | THE COURT:  All right. |
| 09:18:57 | 4 | MR. ORR:  We close, I guess. |
| 09:18:58 | 5 | THE COURT:  Okay. |
| 09:18:59 | 6 | MR. ORR:  We're ready. |
| 09:19:01 | 7 | THE COURT:  Everybody's closed but you need to renew |
| 09:19:03 | 8 | your -- |
| 09:19:04 | 9 | MR. ORR:  I was about to do that.  Yes, we renew our |
| 09:19:07 | 10 | motion for judgment of acquittal under Federal Rule of Criminal |
| 09:19:10 | 11 | Procedure 29, your Honor, on the basis of insufficient evidence. |
| 09:19:13 | 12 | THE COURT:  And the objection and motion is overruled. |
| 09:19:19 | 13 | Are you ready for that?  All right.  John, tell the |
| 09:19:29 | 14 | jury that we'll be recessed for at least 30 minutes, to be ready |
| 09:19:33 | 15 | to come back in 30 minutes. |
| 09:19:37 | 16 | COURT SECURITY OFFICER:  Yes, sir. |
| 09:19:37 | 17 | THE COURT:  I'll have the Court's proposed charge to |
| 09:19:43 | 18 | you in a minute or two. |
| 09:19:45 | 19 | How long do you wish to argue, Ms. Douglas? |
| 09:19:48 | 20 | MS. DOUGLAS:  May we get 20 minutes, your Honor? |
| 09:19:50 | 21 | THE COURT:  Sure.  I don't ever limit argument.  I |
| 09:19:53 | 22 | usually recommend to the lawyers not to take more than 30.  But |
| 09:19:59 | 23 | 20 minutes is fine. |
| 09:20:01 | 24 | MR. SPARKS:  Can we have 30, just in case, your Honor? |
| 09:20:05 | 25 | We'll try to use that judiciously. |

| | | |
|---|---|---|
| 09:20:07 | 1 | THE COURT:  It took you -- so you want -- I don't care. |
| 09:20:12 | 2 | Take 30 if you want. |
| 09:20:14 | 3 | MR. ORR:  I want whatever they want, your Honor.  I |
| 09:20:16 | 4 | probably won't use it.  But I think the jury gets enough of me in |
| 09:20:20 | 5 | 15 to 20 minutes. |
| 09:20:21 | 6 | THE COURT:  We haven't had a whole lot of evidence to |
| 09:20:23 | 7 | talk about in 30 minutes, but you can take 30 minutes. |
| 09:42:32 | 8 | (Recess.) |
| 09:42:41 | 9 | THE COURT:  Ms. Douglas, have you had an opportunity to |
| 09:42:43 | 10 | review the proposed instructions to the jury? |
| 09:42:46 | 11 | MS. DOUGLAS:  Yes, your Honor. |
| 09:42:46 | 12 | THE COURT:  I'll take your objections, comments or |
| 09:42:48 | 13 | observations at this time. |
| 09:42:49 | 14 | MS. DOUGLAS:  No objections from the government.  The |
| 09:42:51 | 15 | charge is fine, your Honor. |
| 09:42:53 | 16 | THE COURT:  Mr. Orr. |
| 09:42:53 | 17 | MR. ORR:  Your Honor, I have reviewed it and, more |
| 09:42:55 | 18 | importantly, Mr. Crawford has reviewed it, and we have no |
| 09:42:57 | 19 | objections. |
| 09:43:00 | 20 | THE COURT:  Do y'all need to take a short break before |
| 09:43:03 | 21 | we start? |
| 09:43:04 | 22 | MS. DOUGLAS:  We're ready, your Honor. |
| 09:43:05 | 23 | MR. ORR:  Sure.  We're ready. |
| 09:43:06 | 24 | THE COURT:  See if they're ready. |
| 09:43:58 | 25 | (Jury present.) |

09:45:16  1          THE COURT:  Members of the jury, I'm going to read to

09:45:20  2   you the legal instructions I've prepared in the case.  The

09:45:23  3   lawyers have copies of the legal instructions and are entitled to

09:45:27  4   comment upon them.  So just sit back and listen.  I will give it

09:45:33  5   to you in writing.  You'll have it in your jury room at the time

09:45:37  6   you deliberate.

09:45:40  7          Members of the jury, you've heard all the evidence in

09:45:42  8   the case.  And I will now instruct you on the rules of law you

09:45:46  9   must follow and apply in arriving at your decision in the case.

09:45:50  10  After I read these instructions, the lawyers will have the right

09:45:53  11  to make their final presentation, and thereafter, you will begin

09:45:56  12  deliberation.

09:45:57  13         In a jury trial there are, in effect, two judges.  The

09:46:02  14  Court is one of the judges and you are the other.  It is my duty

09:46:05  15  to preside over the trial and to determine what evidence is

09:46:07  16  relevant under the law for your consideration.  It is also my

09:46:12  17  duty at the end of the trial to instruct you on the law

09:46:15  18  applicable to the case.

09:46:16  19         You, as jurors, are the judges of the facts.  But in

09:46:20  20  determining what actually happened, that is, in reaching your

09:46:22  21  decision as to the facts, it is your sworn duty to follow all of

09:46:26  22  the rules of law as I explain them to you.

09:46:28  23         You have no right to disregard or give special

09:46:31  24  attention to any one instruction or to question the wisdom or the

09:46:35  25  correctness of any rule I may state to you.  You may not

09:46:39  1  substitute or follow your own notion or opinion as to what the

09:46:43  2  law is or ought to be.  It is your duty to apply the law as I

09:46:47  3  explain it to you, regardless of the consequences.

09:46:50  4      It is also your duty to base your verdict solely upon

09:46:53  5  the evidence, without prejudice or sympathy.  That was the

09:46:57  6  promise you made and the oath that you took before being accepted

09:47:01  7  by the parties as jurors, and the parties have the right to

09:47:05  8  expect nothing less.

09:47:07  9      The defendant, Arthur Langoria, has been charged with

09:47:09  10  possession of a firearm by a convicted felon, in violation of

09:47:14  11  Title 18, United States Code, Section 922(g)(1).

09:47:18  12      This is a federal violation.  The indictment is simply

09:47:22  13  the description of the formal charge made by the government

09:47:25  14  against the defendant; it is not evidence of guilt.  Indeed, the

09:47:29  15  law presumes the defendant to be innocent.

09:47:32  16      The presumption of innocence means a defendant starts

09:47:34  17  the trial with a clean slate.  You must presume a defendant is

09:47:38  18  innocent throughout your deliberations until such time, if ever,

09:47:43  19  you, as a jury, are satisfied that the government has proved the

09:47:46  20  defendant guilty beyond a reasonable doubt.  Unless you are

09:47:51  21  satisfied beyond a reasonable doubt that the defendant is guilty,

09:47:53  22  the presumption alone is sufficient to find the defendant not

09:47:57  23  guilty.  In other words, the law does not require a defendant to

09:48:01  24  prove his innocence or produce any evidence at all.  The

09:48:04  25  government has the burden of proving each defendant guilty beyond

09:48:10  1  a reasonable doubt on the charge, and if it fails to do so, you

09:48:12  2  must acquit the defendant on that charge.

09:48:15  3        While the government's burden of proof is a strict or

09:48:18  4  heavy burden, the defendant's guilt does not need to be proved

09:48:22  5  beyond all doubt.  It is only required that the government's

09:48:25  6  proof exclude any reasonable doubt concerning the defendant's

09:48:28  7  guilt.  A reasonable doubt is a doubt based upon common and --

09:48:36  8  based upon reason and common sense, after careful and impartial

09:48:39  9  consideration of all the evidence in the case.  Proof beyond a

09:48:44  10  reasonable doubt, therefore, is proof of such a convincing

09:48:47  11  character that you would be willing to rely and act upon it

09:48:50  12  without hesitation in the most important of your own affairs.

09:48:54  13        In determining the facts, you must consider only the

09:48:57  14  evidence presented during the trial, including the sworn

09:49:01  15  testimony of the witnesses, exhibits, and any stipulations

09:49:05  16  entered by the parties.  Your determination must be based solely

09:49:09  17  on the legally admissible evidence and testimony.  Remember that

09:49:13  18  any statements, objections, or arguments made by the lawyers are

09:49:17  19  not evidence.  The function of the lawyers is to point out those

09:49:21  20  things that are most significant or helpful to their side of the

09:49:24  21  case, and in doing so, to call your attention to certain facts or

09:49:29  22  inferences that might otherwise escape your notice.  In the final

09:49:34  23  analysis, however, it is your own recollection and interpretation

09:49:37  24  of the evidence that controls in the case.  What the lawyers say

09:49:42  25  is not binding on you.

09:49:44  1    During the trial, I have sustained objections to
09:49:46  2  certain questions and exhibits.  You must disregard those
09:49:51  3  questions and exhibits entirely.  Do not speculate as to what the
09:49:54  4  witness would have said if permitted to answer the question or as
09:49:57  5  to the contents of the exhibit.
09:50:00  6    Also, do not assume that from anything that I may have
09:50:04  7  done or said during the trial that I have any opinion concerning
09:50:08  8  any of the issues in this case.  Except for the instructions to
09:50:11  9  you on the law, you should disregard anything I may have said
09:50:14  10  during the trial in arriving at your own findings as to the guilt
09:50:18  11  or innocence of the defendant.
09:50:20  12    While you should consider only the evidence in the
09:50:23  13  case, you're permitted to draw reasonable inferences from the
09:50:27  14  testimony and the exhibits as you feel are justified in the light
09:50:30  15  of common experience.  In other words, you may make deductions
09:50:34  16  and reach conclusions that reason and common sense lead you to
09:50:39  17  draw from the facts that have been established by the testimony
09:50:43  18  and the evidence in the case.
09:50:45  19    In considering the evidence, you should not be
09:50:48  20  concerned whether the evidence is direct evidence or
09:50:50  21  circumstantial evidence.  Direct evidence is the testimony of one
09:50:55  22  who asserts actual knowledge of a fact, such as an eyewitness.
09:51:00  23  Circumstantial evidence is a proof of a chain of facts or
09:51:04  24  circumstances indicating that the defendant is either guilty or
09:51:07  25  not guilty.  The law makes no distinction between the weight you

09:51:11   1   may give to either direct or circumstantial evidence.

09:51:16   2       I remind you that it is your job to decide whether the

09:51:19   3   government has proved the guilt of the defendant beyond a

09:51:23   4   reasonable doubt.  And in doing so, you must consider all of the

09:51:25   5   evidence.  This does not mean, however, that you must accept all

09:51:29   6   the evidence as true or accurate.

09:51:32   7       You're the sole judges of the credibility or the

09:51:35   8   believability of each witness and the weight to be given the

09:51:38   9   witness' testimony.  An important part of your job will be making

09:51:42   10   judgments of the testimony of the witnesses who did testify in

09:51:45   11   the case.  You should decide whether you believe what each person

09:51:49   12   had to say, and how important that testimony was.  In making that

09:51:54   13   decision, I suggest that you ask yourself a few questions:  Did

09:51:58   14   the person impress you as honest?  Did the witness have any

09:52:02   15   particular reason not to tell the truth?  Did the witness have a

09:52:05   16   personal interest in the outcome of the case?  Did the witness

09:52:09   17   have any relationship with either the government or the defense?

09:52:13   18   Did the witness seem to have a good memory?  Did the witness have

09:52:16   19   the opportunity and ability to understand the questions clearly

09:52:20   20   and answer them directly?  Did the witness' testimony differ from

09:52:24   21   the testimony of other witnesses?  These are a few of the

09:52:29   22   considerations that may help you to determine the accuracy of

09:52:32   23   what each witness said.

09:52:35   24       In this case, the government called as witnesses law

09:52:37   25   enforcement officers or agents.  You are instructed the testimony

09:52:42  1  of a member of law enforcement should be weighed and his

09:52:46  2  credibility evaluated in the same way as that of any other

09:52:50  3  witnesses.  The status of a witness as a law enforcement officer

09:52:54  4  is not to be considered in weighing the credibility of that

09:52:58  5  witness.

09:53:00  6          During the trial, you've heard the testimony of David

09:53:03  7  Berryhill and Daniel Jones, who expressed opinions concerning

09:53:06  8  firearms.  If scientific, technical, or other specialized

09:53:10  9  knowledge might assist the jury in understanding the evidence or

09:53:13  10  in determining a fact in issue, a witness qualified by knowledge,

09:53:18  11  skill, experience, training, or education may testify and may

09:53:23  12  state an opinion concerning such matters.  Merely because such a

09:53:27  13  witness has expressed an opinion does not mean, however, that you

09:53:30  14  must accept the opinion.  You should judge such testimony like

09:53:35  15  any other testimony.  You may accept it or reject it, and give it

09:53:41  16  as much weight as you think it deserves, considering the witness'

09:53:44  17  education and experience, the soundness of the reasons given for

09:53:47  18  the opinion, and all other evidence in the case.

09:53:51  19          You must always bear in mind that the law never imposes

09:53:54  20  upon a defendant in a criminal case the burden or duty of calling

09:53:58  21  witnesses or producing any evidence.  The defendant has a right

09:54:02  22  not to testify in a criminal case, and his choice not to testify

09:54:06  23  should not be considered as evidence of guilt or innocence.

09:54:11  24          Furthermore, I caution you, members of the jury, that

09:54:14  25  you're here to determine the guilt or innocence of the defendant

09:54:18  1    in the crime charged from the evidence in the case.  The

09:54:21  2    defendant is not on trial for any act, conduct, or offense not

09:54:25  3    alleged in the indictment.  Neither are you called upon to return

09:54:29  4    a verdict as to the guilt or innocence of any other person or

09:54:32  5    persons not on trial as a defendant in this case.

09:54:36  6            Finally, the punishment provided by law for the offense

09:54:41  7    charged in the indictment is a matter exclusively within the

09:54:44  8    province of the Court.  If the defendant is found guilty, it will

09:54:48  9    be my duty to decide what the punishment will be.  You should not

09:54:52  10   be concerned with punishment in any way in arriving at an

09:54:55  11   impartial verdict as to the guilt or innocence of the defendant,

09:54:59  12   and it should not enter into your consideration or discussion.

09:55:05  13           Now that I have given you your general duties as

09:55:08  14   jurors, I will instruct you on the law in the case.

09:55:10  15           You're instructed that Travis County, Texas, lies

09:55:13  16   within the Western District of Texas.

09:55:16  17           You will note that the indictment charges the offense

09:55:19  18   was committed on or about specific dates.  You're instructed the

09:55:23  19   government does not have to prove the crime was committed on that

09:55:27  20   exact date, so long as the government proves beyond a reasonable

09:55:31  21   doubt the defendant committed the crime on a date reasonably near

09:55:34  22   the date stated in the indictment.

09:55:37  23           The term knowingly as used in these instructions means

09:55:41  24   the act was done voluntarily and intentionally and not because of

09:55:46  25   mistake or accident.  It is reasonable to infer that a person

09:55:50  1  ordinarily intends the natural and probable consequences of his

09:55:55  2  or her knowing acts.  You may draw the inference an accused

09:56:00  3  intended all of the consequences which one standing in like

09:56:04  4  circumstances and possessing like knowledge should reasonably

09:56:08  5  have expected to result from any intentional act or conscious

09:56:12  6  omission by the defendant.

09:56:14  7       Along with these instructions, you will receive a

09:56:18  8  verdict form.  Answer each question using the following

09:56:22  9  instructions of the applicable count.

09:56:25  10       Count 1, Possession of a Firearm By a Convicted Felon.

09:56:28  11  Title 18, United States Code, Section 922(g)(1), makes it a crime

09:56:34  12  for a convicted felon to possess a firearm.

09:56:45  13       For you to find the defendant guilty of this crime, you

09:56:47  14  must be convinced that the government has proved each of the

09:56:51  15  following elements beyond a reasonable doubt:

09:56:54  16       First:  That the defendant knowingly possessed a

09:56:58  17  firearm, specifically, a Hi-Point, Model CF380, .380 caliber,

09:57:04  18  semiautomatic pistol, Serial No. P870065;

09:57:12  19       Second:  That before the defendant possessed the

09:57:15  20  firearm, the defendant had been convicted in a court of a crime

09:57:19  21  punishable by imprisonment for a term in excess of one year, that

09:57:23  22  is, a felony offense; and

09:57:24  23       Third:  That the possession of the firearm was

09:57:26  24  affecting commerce; that is, that before the defendant possessed

09:57:30  25  the firearm, it had traveled at some point from one state to

09:57:35  1   another.

09:57:36  2          The parties have stipulated that before the defendant

09:57:40  3   is alleged to have possessed the firearm, Arthur Langoria had

09:57:44  4   been convicted in a court of a crime punishable by imprisonment

09:57:48  5   for a term in excess of one year, that is, a felony offense.

09:57:52  6          The term firearm means any weapon that will or is

09:57:56  7   designed to or may readily be converted to expel a projectile

09:58:01  8   from the action of an explosive.  The term firearm also includes

09:58:05  9   the frame or receiver of any such weapon, or any firearm muffler

09:58:11  10  or firearm silencer, or destructive device.  The government is

09:58:14  11  not required to prove the defendant knew the firearm had

09:58:17  12  previously traveled in interstate commerce.

09:58:20  13         Possession, as that term is used in this case, may be

09:58:25  14  of two kinds: actual possession or constructive possession.  A

09:58:30  15  person who knowingly has direct, physical control over a thing,

09:58:35  16  at a given time, is then in actual possession of it.  A person

09:58:40  17  who, although not in actual possession, knowingly has both the

09:58:45  18  power and the intention, at a given time, to exercise dominion or

09:58:50  19  control over a thing, either directly or through another person

09:58:54  20  or persons, is then in constructive possession of it.  Possession

09:58:59  21  may be sole or joint.  If one person alone has actual or

09:59:03  22  constructive possession of a thing, possession is sole.  If two

09:59:08  23  or more persons share actual or constructive possession of a

09:59:11  24  thing, possession is joint.  You may find that the element of

09:59:16  25  possession, as that term is used in these instructions, is

09:59:19   1   present if you find beyond a reasonable doubt that the defendant

09:59:24   2   had actual or constructive possession, either alone or jointly

09:59:29   3   with others.

09:59:31   4          Question 1 asks:  Do you find beyond a reasonable doubt

09:59:34   5   that the defendant, Arthur Langoria, committed the offense of

09:59:37   6   possession of a firearm by a convicted felon, as charged in Count

09:59:42   7   1 of the indictment?  Answer not guilty or guilty.

09:59:45   8          Your task is to decide whether the government has

09:59:49   9   proved beyond a reasonable doubt that the defendant committed

09:59:52  10   this crime.  If you find the government has not proved beyond a

09:59:56  11   reasonable doubt that the defendant is guilty of possession of a

10:00:00  12   firearm by a convicted felon, as charged in Count 1, answer not

10:00:03  13   guilty to Question 1 on the verdict form.  If you find the

10:00:07  14   government has proved beyond a reasonable doubt that the

10:00:10  15   defendant is guilty of possession of a firearm by a convicted

10:00:14  16   felon, as charged in Count 1, answer guilty to Question 1 on the

10:00:19  17   verdict form.  And you answer no further questions.

10:00:22  18          Any verdict must represent the considered judgment of

10:00:26  19   each juror.  In order to return a verdict, it is necessary that

10:00:29  20   each juror agree to the verdict.  Your verdict must be unanimous

10:00:34  21   on the count in the indictment.  Your deliberations will be

10:00:37  22   secret.  You will never have to explain your verdict to anyone.

10:00:40  23          It is your duty as jurors to consult with one another

10:00:44  24   and to deliberate in an effort to reach agreement, if you can do

10:00:47  25   so without violence to your individual judgment.  Each of you

10:00:51  1  must decide the case for yourself, but only after an impartial

10:00:55  2  consideration of the evidence in the case with your fellow

10:01:01  3  jurors.  In the course of your deliberations, you may choose to

10:01:03  4  reexamine your own views and even change your mind completely

10:01:06  5  after discussing the evidence with other jurors.  However, do not

10:01:10  6  surrender your honest conviction as to the weight or the effect

10:01:13  7  of the evidence solely because of the opinion of your fellow

10:01:16  8  jurors, or for the mere purpose of returning a verdict.

10:01:21  9       Remember at all times that you're not partisans.

10:01:25  10  You're now judges, judges of the facts, and your duty is to

10:01:29  11  decide whether the government has proved the defendant guilty

10:01:32  12  beyond a reasonable doubt.

10:01:34  13       Upon retiring to the jury room, you should first select

10:01:37  14  one of you to act as your presiding juror, who will preside over

10:01:41  15  your deliberations and will be your spokesperson here in court.

10:01:45  16  A verdict form for each defendant has been prepared for your

10:01:49  17  convenience.  You will take the verdict form to the jury room.

10:01:52  18  When you have reached the unanimous agreement as to your verdict,

10:01:55  19  the presiding juror will write in the unanimous verdict of the

10:01:59  20  jury in the spaces provided, and date and sign the form.  You

10:02:03  21  will then return to the courtroom to deliver your verdict.

10:02:07  22       If during your deliberations you should desire to

10:02:09  23  communicate with the Court, please reduce your message to

10:02:15  24  writing, signed by the presiding juror, and pass the note to the

10:02:18  25  court security officer, who will bring it to my attention.  I

10:02:22  1  will either answer your question in writing or bring you back to

10:02:25  2  the courtroom for other verbal instructions.  Bear in mind,

10:02:30  3  however, you are never to reveal to any person, not even the

10:02:33  4  Court, how the jury stands, numerically or otherwise, on any

10:02:38  5  count in the indictment, until after you've reached a unanimous

10:02:41  6  verdict.  And a place for my signature to send it to you.

10:02:45  7          The verdict of the jury is simply one page.  It says,

10:02:50  8  do you find beyond a reasonable doubt the defendant, Arthur

10:02:53  9  Langoria, committed the offense of possession of a firearm by a

10:02:56  10  convicted felon, as charged in Count 1 of the indictment?  You're

10:03:00  11  to answer "not guilty" or "guilty" there, and have the presiding

10:03:03  12  juror sign and file it.  In addition to these instructions and

10:03:08  13  the verdict form, you will get a copy of the indictment that was

10:03:12  14  read to you at the beginning of this trial and a copy of all of

10:03:18  15  the exhibits.

10:03:20  16          I permitted each of the parties to speak for 30 minutes

10:03:27  17  if they need to.  They could use all 30 minutes.  If they don't,

10:03:31  18  they're going to give you some time back.  But before we start

10:03:34  19  with that, then, I think what I'll do is -- because that will be

10:03:38  20  a good hour of listening, I'm going to let you get into a short

10:03:43  21  break, use the facilities, stretch, get your mind clear and then,

10:03:47  22  come back, ready to listen to the lawyers.

10:03:49  23          There are two things, in addition, I want to tell you.

10:03:53  24  Sometimes it's necessary to ask a question or send a comment to

10:03:56  25  the Court.  Let me tell you, the procedure I have to do is I stop

| | | |
|---|---|---|
| 10:04:00 | 1 | whatever I'm doing, I call the parties back in the courtroom.  I |
| 10:04:06 | 2 | could be upstairs doing some other stuff, and so, it may take |
| 10:04:10 | 3 | some time.  The parties then are allowed to review what you have |
| 10:04:15 | 4 | written, and will advise me and suggest how I should answer it, |
| 10:04:21 | 5 | and then, I will answer it generally in writing.  The point is, |
| 10:04:26 | 6 | it takes time.  Never stop your deliberations.  Continue to |
| 10:04:31 | 7 | deliberate.  Many times, that question becomes unimportant later |
| 10:04:37 | 8 | on. |
| 10:04:38 | 9 | The second is, you're to deliberate only when 12 of you |
| 10:04:42 | 10 | are present.  If you want to take a break, and somebody wants to |
| 10:04:45 | 11 | go outside, or somebody wants to go to the restroom, everybody |
| 10:04:48 | 12 | stops talking about the case until the 12 of you are back so that |
| 10:04:53 | 13 | each one hears everything that is said. |
| 10:04:58 | 14 | The time will be yours.  If you decide to take a lunch |
| 10:05:03 | 15 | break, I need for you to write that you're going to be gone from |
| 10:05:10 | 16 | 12:00 to 1:15, or whatever time it will be, so that I can have |
| 10:05:17 | 17 | the courthouse ready for you when you return.  You do not have to |
| 10:05:21 | 18 | leave.  You're welcome to stay in the jury room, if you prefer to |
| 10:05:27 | 19 | stay in the jury room, rather than to go to lunch.  If you decide |
| 10:05:30 | 20 | to go to lunch -- you don't have to go to lunch -- you're going |
| 10:05:33 | 21 | to be in charge of your own time from now, only I just need to |
| 10:05:36 | 22 | know what is the desire of the jury. |
| 10:05:43 | 23 | Okay.  Give you a short break. |
| 10:06:32 | 24 | (Recess.) |
| 10:14:20 | 25 | MR. SPARKS:  Thank you, your Honor. |

| | | |
|---|---|---|
| 10:14:21 | 1 | THE COURT: Mr. Sparks, you have the lectern. |
| 10:14:24 | 2 | GOVERNMENT'S CLOSING STATEMENTS |
| 10:14:25 | 3 | MR. SPARKS: Mr. Orr, Mr. Crawford. |
| 10:14:27 | 4 | Ladies and gentlemen of the jury, yesterday and, I |
| 10:14:33 | 5 | suppose, this morning, I found myself thinking -- trying to get |
| 10:14:40 | 6 | -- trying to predict what was going through your minds as you |
| 10:14:43 | 7 | drove downtown and got drawn into jury service for potentially |
| 10:14:48 | 8 | being on a jury. And sometimes the lawyers -- at least I know I |
| 10:14:52 | 9 | do this. I'll try to -- I'll tend to stare over at the jurors |
| 10:14:55 | 10 | and try to peek into your minds and see if I can read you, and I |
| 10:14:59 | 11 | could tell you that you've got pretty good poker faces, and you |
| 10:15:03 | 12 | don't tend to show your cards much. |
| 10:15:07 | 13 | I can tell you what I imagine. I imagine you starting |
| 10:15:13 | 14 | your day, knowing you're coming to Austin, coordinating with your |
| 10:15:18 | 15 | respective maybe spouses, your children, your -- some of your |
| 10:15:23 | 16 | spoiled pets, just basically tending to all your normal |
| 10:15:29 | 17 | day-to-day responsibilities, coordinating with your work, your |
| 10:15:32 | 18 | job, your household, all these things. Some of you or several of |
| 10:15:37 | 19 | you may have even done as Judge Sparks mentioned and tuned into |
| 10:15:42 | 20 | the Olympics the night before last night and seeing these -- |
| 10:15:48 | 21 | really, these inspirational not only stories but performances |
| 10:15:52 | 22 | that were based on hard work, commitment, dedication, |
| 10:16:00 | 23 | accountability. Really, the world -- well, the world, the United |
| 10:16:05 | 24 | States is watching, and these athletes go out there and perform. |
| 10:16:10 | 25 | At some level, possibly to you, they are accountable if they fall |

10:16:14  1  short of the mark, alls they can really do is look in the camera

10:16:17  2  or in the mirror and just sort of accept they went out there and

10:16:21  3  did their best.

10:16:22  4          And so, I got to think about that and what a contrast

10:16:28  5  we've got from what some of you may have tuned into to what

10:16:32  6  you've tuned into over the past two days.  You tuned into the

10:16:36  7  Arthur Longoria show, and the game he plays is strikingly

10:16:41  8  different.  It's a game of deceit, it's a game of proactive

10:16:48  9  avoidance of responsibility.  And what did Arthur Longoria do?

10:16:53  10  He did a couple of things that we know, and I'm not going to

10:16:55  11  regurgitate all of them but just some things that he proactively

10:17:01  12  did.

10:17:01  13          He had a cleanup effort that was maybe worthy of a

10:17:10  14  medal, if one were given, for the type of game he's playing.  He

10:17:15  15  goes to David Lee and tries to get him to sign some sort of

10:17:21  16  paper, presumably placing blame for the possession of the firearm

10:17:27  17  on somebody else.  What else does he do?  Well, he's smart

10:17:32  18  enough, at least in the interview with the officer, to avoid

10:17:37  19  responsibility.  And he's smart enough, convicted felon, to fudge

10:17:42  20  and say, well, those were for -- and this is months, months

10:17:47  21  later.  Those firearms were for my wife's birthday.  So he fudges

10:17:52  22  there a little bit.  Those items, I submit to you, are

10:17:57  23  circumstantial evidence of his knowledge.  He knows he can't

10:18:00  24  possess a gun; that's why he's going -- proactively driving

10:18:04  25  wherever the Jiffy Lube is to where David Lee works to get him to

10:18:07  1  sign whatever this piece of paper says, deliberately saying when

10:18:12  2  he says on the interview because he knows as a convicted felon,

10:18:15  3  he can't have a firearm.  That is circumstantial evidence.

10:18:20  4       And then, you know, he stoops low enough to try to put

10:18:24  5  on his wife, Loretta Garcia-Longoria.  I'd submit to you that the

10:18:28  6  defense has an equal right to -- where is Loretta Garcia?  They

10:18:33  7  have a right to subpoena witnesses.  Where is she?  Presumably,

10:18:37  8  they have at least an equal, or maybe a greater, access to

10:18:42  9  someone that is the defendant's spouse to get her here and tell

10:18:46 10  you what, you know, allegedly she's going to say.

10:18:52 11       Now, and I say that not to be confrontational on this

10:18:56 12  side of the table.  Mr. Orr and Mr. Crawford are gentlemen

10:19:00 13  lawyers.  I don't begrudge the decisions they make in calling a

10:19:04 14  witness, not calling a witness.  You've observed our interaction

10:19:08 15  with one another.  It's courteous, it's respectful.  Sometimes it

10:19:15 16  may seem, as you watched us, a little lighthearted, but maybe

10:19:21 17  that's gallows humor for the type of work we're in.  But make no

10:19:25 18  mistake about this case, it's about possession, but it's also --

10:19:28 19  it's about public safety.  And the question -- the obvious

10:19:33 20  question is, do we want a convicted felon to possess this type of

10:19:39 21  a weapon?

10:19:44 22       It's not an antigun case.  It's not an antigun case.

10:19:49 23  Many of you may be just as excited as others about opening day of

10:19:56 24  hunting season.  It's not an antigun case.  It's an

10:20:05 25  anti-felon-in-possession case.  It's really just as simple as

10:20:15  1  that.  We've got Mr. Longoria admitting actual possession.  We've

10:20:20  2  got him in constructive possession in the bedroom of his home.

10:20:24  3  The uncontroverted evidence from Mr. Lee is that he sold the gun

10:20:28  4  directly to Arthur Longoria.  So the question becomes, is Lee

10:20:32  5  credible?

10:20:34  6          Just a few observations.  Mr. Lee was unwavering in his

10:20:38  7  testimony on direct and on cross.  He has -- I'll submit to you

10:20:44  8  he has no axe to grind with Mr. Longoria.  He tried -- in fact,

10:20:48  9  he tried to mitigate things a little bit with Detective Skolaut.

10:20:54  10  Ultimately, he came out and told the ugly truth.  He didn't want

10:20:59  11  to do that.  They were friends.  You heard from the defense

10:21:04  12  witness that he even stayed in the home for several weeks.  This

10:21:09  13  was an uncomfortable position for him to be in, but he came in

10:21:13  14  and did the right thing.  He picked him out of a lineup.  He just

10:21:19  15  as easily, I submit to you, could have said that he sold the guns

10:21:23  16  to Loretta.  Would law enforcement have been any the wiser?  He

10:21:28  17  could have easily done that; but instead, he came in -- and I

10:21:31  18  submit to you, he's a credible witness.  He came in and told the

10:21:35  19  truth.  But I guess, more importantly, is the word -- are the

10:21:41  20  words of Arthur Longoria, himself.  He admits possessing the

10:21:46  21  firearms on videotape.  He hedges a little.  He fudges a little.

10:21:53  22          A couple of questions, then I'm going sit down and Ms.

10:21:56  23  Douglas is going to speak to you, and Mr. Orr and Mr. Crawford

10:21:59  24  will, as well.

10:22:01  25          When you keep a gun under your bed, near your safe, and

10:22:06  1  $1,500 in your wallet, who do we really think possessed that?  Is

10:22:12  2  it is the wife that Arthur Longoria tells you didn't even know

10:22:14  3  how to shoot it, yet, they were intending to go out and have

10:22:17  4  lessons?  Those are Arthur Longoria.  On the interview tape, if

10:22:22  5  we're going to scrutinize credibility in every case, you need to

10:22:24  6  scrutinize the witnesses and the evidence.  The evidence here I'm

10:22:29  7  referring to is the videotaped statement of Arthur Longoria.  He

10:22:32  8  says the firearm's there for home protection.  Home protection,

10:22:38  9  you know, that's not a defense to actual or constructive

10:22:43  10  possession of a firearm by a felon.

10:22:46  11          Will it be important to some of you that, you know, he

10:22:50  12  had it for home protection?  I don't know.  I doubt it.  But if

10:22:56  13  he's so concerned about home protection, couldn't he have perhaps

10:23:00  14  taken that $1,500 in his wallet and maybe 150 to 200-plus that he

10:23:05  15  paid over to David Lee, invest it in a security system?  He could

10:23:10  16  probably buy himself a pretty decent alarm system and bar some

10:23:15  17  doors and windows for that amount of money.  I submit to you

10:23:18  18  that's not what he was doing.  He intentionally, knowingly

10:23:21  19  possessed the firearm.  Thank you.

10:23:25  20          THE COURT:  Mr. Orr.

10:23:29  21  DEFENDANT'S CLOSING STATEMENTS

10:23:31  22          MR. ORR:  Your Honor, may it please the Court.

10:23:33  23          Ladies and gentlemen of the jury, Mr. Sparks, Ms.

10:23:35  24  Douglas, this trial's been pretty short, shorter than we thought,

10:23:41  25  mercifully for you.  The lawyers here, we always enjoy being in

10:23:45  1  trial and it's always -- it's a pleasure being in trial with Mr.

10:23:48  2  Sparks and Ms. Douglas.  As he noted, they're very courteous and

10:23:53  3  I'm sometimes a little bit of a jerk, but I've been doing this a

10:23:57  4  long time and I just can't help it sometimes.  I'm a lawyer, what

10:23:59  5  do you want?  Doing the best I can do to be a real person.

10:24:02  6      But what I want y'all to do here is look at the

10:24:06  7  evidence, and I want you to consider the indictment, consider the

10:24:11  8  Court's charge, and you decide if the government has proven the

10:24:15  9  allegations of the indictment that the federal grand jury

10:24:18  10  returned against Mr. Longoria, beyond a reasonable doubt, and if

10:24:21  11  they've done it within the terms of the charge the Judge just

10:24:24  12  read to y'all a few minutes ago.

10:24:28  13      And as you go through all this, as the Judge and Mr.

10:24:32  14  Sparks tell you, you're entitled to believe some of the witness'

10:24:35  15  testimony, all of it, or none of it.  So you've heard testimony

10:24:40  16  from Mr. Lee, you've heard from Detective Skolaut, you've heard a

10:24:45  17  couple of defense witnesses.  You've heard the statement of Mr.

10:24:48  18  Longoria when he was talking to the police.  You heard -- gee, I

10:24:56  19  don't remember all the witnesses, all the rest of them.  Whatever

10:24:59  20  -- not very many witnesses.  But you have 12 recollections, 12

10:25:03  21  minds, 12 memories over there to remember all the witnesses and

10:25:06  22  what they said.

10:25:07  23      But first, let's look at the indictment, and it charges

10:25:12  24  that on or about December 4th, 2007, that Mr. Longoria, convicted

10:25:18  25  of a crime punishable by imprisonment for a term exceeding one

10:25:21  1  year, which he stipulated to that, did knowingly possess in and

10:25:24  2  affecting commerce a firearm, and that's the .380 that's in

10:25:28  3  evidence here.  He's not charged with a shotgun.  And then, the

10:25:33  4  Court says that he's in violation of 18 United States Code,

10:25:39  5  Section 922(g), some legal language that needs to be in there you

10:25:43  6  don't need to concern yourselves about.  But let's look at how

10:25:46  7  all this came down.  Just look at the overall case here.

10:25:51  8          That is that on December the 4th of last year, a raid

10:25:55  9  was conducted at the residence of Loretta Garcia, some other

10:26:01  10  people, and Arthur Longoria.  The police there find a couple of

10:26:09  11  firearms.  They found the shotgun, they found the .380.  The

10:26:13  12  .380's under the bed.  The shotgun is in the gun safe.  And they

10:26:19  13  then do a firearms check and conclude that the .380, at least,

10:26:25  14  comes -- was purchased by Jonathan David Lee.  And I didn't hear

10:26:30  15  any testimony about a firearms check on the shotgun.  And Mr. Lee

10:26:35  16  told you about selling a .410 shotgun.  And you heard the

10:26:39  17  testimony about how a .410 does not look like a 12-gauge.

10:26:45  18          And I'm going to guess that being Texas that at least

10:26:49  19  some of y'all know the difference between a .410 and a 12-gauge.

10:26:55  20  Mr. Lee, I think, even sort of admitted that maybe -- I mean one

10:26:59  21  of his versions of his testimony that the .380 was for Loretta

10:27:03  22  Garcia.  And he tried to say the .410, I think, was maybe for Mr.

10:27:14  23  Longoria, but that's not it.  It's not there.  Where is this .410

10:27:17  24  he claims he sold?  Where's the firearms trace on the 12-gauge?

10:27:22  25          And if you remember when the officers, Detective

10:27:26  1   Balderama, that's another one, when he was asking Mr. Longoria

10:27:30  2   about the firearms, he seemed to be talking about the .410 and

10:27:35  3   the .380.  The guns he's mentioning, he's asking, where did you

10:27:40  4   get them?  Mr. Longoria says Jonathan David Lee.  Well, he says

10:27:45  5   "Tater."  He identifies as "Tater" sold them to Loretta.  Loretta

10:27:50  6   bought it.  There's something very strange going on here.  I

10:27:56  7   don't know if it's confusion, but the officer, I think, is asking

10:28:00  8   about the .410.  You'll have the tape.  At least Mr. Longoria's

10:28:04  9   talking to him about a .410 that Loretta purchased.  But there

10:28:08  10  was no .410 found.  And at no point does the officer say, wait,

10:28:13  11  wait, wait .410, what about a .410?  What about the 12-gauge that

10:28:20  12  was in there?

10:28:21  13          Because if you remember, I was asking sequences.  When

10:28:24  14  did things happen?  Because at the time that Mr. Longoria was

10:28:29  15  interviewed on May the 2nd, the police had already talked to

10:28:35  16  Jonathan David Lee and already had the firearms trace on the

10:28:38  17  .380, but they didn't have a firearms trace on a .410 because no

10:28:43  18  .410 was found.  But if they did one on the 12-gauge, we

10:28:50  19  certainly haven't heard about it.  So I'm really -- I'm confused

10:28:59  20  about what's the story of Mr. Lee?  If he sold a .410 and a .380

10:29:08  21  in August, what happened to the .410?

10:29:12  22          Now, you notice in the indictment Mr. Longoria's

10:29:14  23  charged with possession on December the 4th of '07.  In the

10:29:24  24  Court's charge does tell you that you will note the indictment

10:29:33  25  charges the offense was committed on or about specific dates.

| | | |
|---|---|---|
| 10:29:36 | 1 | You are instructed the government does not have to prove the |
| 10:29:38 | 2 | crime was committed on that exact date, so long as the government |
| 10:29:42 | 3 | proves beyond a reasonable doubt the defendant committed the |
| 10:29:45 | 4 | crime on a date, reasonably near the date stated in the |
| 10:29:48 | 5 | indictment. |
| 10:29:50 | 6 | Now, that's for you to decide what's reasonably near. |
| 10:29:54 | 7 | And so, the police asked Mr. Longoria, they say, well, did you |
| 10:29:59 | 8 | buy the gun?  No.  Loretta bought the gun.  They tried to get him |
| 10:30:02 | 9 | several times to say that he bought the guns.  He's not charged |
| 10:30:05 | 10 | with buying guns, he's charged with possessing guns, but they try |
| 10:30:08 | 11 | to get him to say that, and he didn't say that.  He did -- the |
| 10:30:11 | 12 | officer said, well, I want you to tell me the truth.  Did you |
| 10:30:13 | 13 | possess the guns?  Did you hand -- you know, he said, well, yeah, |
| 10:30:17 | 14 | I did handle the guns, but he didn't tell you when.  He doesn't |
| 10:30:21 | 15 | say, on December the 4th of 2007, I handled the guns.  Who knows |
| 10:30:26 | 16 | when that was, if it even happened.  Who knows what handle means. |
| 10:30:31 | 17 | And it's up to you to decide even if you believe, in fact, he |
| 10:30:34 | 18 | handled the guns, does that amount to possession under the |
| 10:30:38 | 19 | Court's charge? |
| 10:30:40 | 20 | Now, we've proven a couple of things here is that |
| 10:30:44 | 21 | Loretta Garcia does not have a prior conviction.  She could have |
| 10:30:48 | 22 | a gun.  She could have all the guns she wants.  And the |
| 10:30:52 | 23 | government says, well, why isn't she here?  Why didn't these |
| 10:30:56 | 24 | lawyers bring her here?  Well, do you remember the raid on |
| 10:30:59 | 25 | December the 4th, 2007?  Think about all the stuff that you've |

10:31:02  1  heard.  And sometimes people don't want to come to federal court.

10:31:06  2  They don't want to be here.  They may have their own reasons for

10:31:09  3  not wanting to be here.

10:31:13  4       So the government through its officers and agents and

10:31:24  5  the Austin Police Department, they make a -- they do a raid on

10:31:28  6  December the 4th of last year.  They find some guns.  They find

10:31:32  7  several people.  And there's pictures of the other people that

10:31:34  8  were arrested or detained in that place because they took their

10:31:37  9  pictures in that apartment on that date.  So some months later,

10:31:42  10  from December to March, I think it was maybe March 13th, but

10:31:47  11  you'll probably remember it better than I do.

10:31:49  12       Detective Skolaut goes and finds -- based on the

10:31:51  13  firearms trace, he finds Jonathan David Lee.  And so, what does

10:31:57  14  he do with Mr. Lee?  He shows him what's been marked as

10:32:00  15  Government's Exhibit 3.  And what is Government's Exhibit 3?

10:32:07  16  It's six mugshots, including Mr. Longoria's.

10:32:16  17       Now, let's think about how fair all this is.  Now,

10:32:19  18  supposedly, Mr. Lee knows Mr. Longoria and I think he does.  I

10:32:22  19  think they're, you know, at least -- I don't know if they were

10:32:25  20  friends, but they sure know each other.  And Mr. Lee, for

10:32:29  21  whatever reason, is minimizing or covering that up.  Okay.  And

10:32:36  22  so, here's this deal.  Here you are.  They find in a raid, they

10:32:42  23  find some guns, they find a guy there that's -- one person's

10:32:45  24  convicted of a felony, Loretta Garcia is not.  Loretta Garcia can

10:32:51  25  have guns.  Convicted felon can't have guns.  That's the case.

10:32:55  1    That's some statistics.  That's what we hope -- what they hope is

10:32:58  2    going to be a conviction.

10:32:59  3           So what do you do?  You go out and talk to a guy, and

10:33:02  4    you show him a photo lineup where the proposed defendant is in

10:33:10  5    his little jail jumpsuit, along with everybody else in jail

10:33:14  6    jumpsuits, and of course, he's going to know the guy.  I think,

10:33:18  7    you know, who knows what the exact details of that conversation

10:33:21  8    were, but don't you think this sends a message to "Tater"?  Don't

10:33:26  9    you think putting this man in a jail jumpsuit and a mugshot and

10:33:32  10   showing it to somebody sends a message?  Yeah, this is the guy we

10:33:36  11   want.

10:33:40  12          And I'm sure "Tater" wasn't too excited about

10:33:43  13   cooperating with the government, but for his own reasons,

10:33:48  14   whatever they may be, buying and selling guns, or whatever

10:33:53  15   reason, because he finally said remember -- he and I went back

10:33:57  16   and forth on cross-exam, then, after lunch, I think it was, the

10:34:01  17   government brought him back in, he finally fessed up, yeah, I

10:34:03  18   didn't want to get in trouble.  He wasn't doing it because he's a

10:34:07  19   good citizen.  He doesn't want to get in trouble.

10:34:09  20          Now, who knows what it really was what he didn't want

10:34:11  21   to get in trouble for because he's cagey enough to not fess up.

10:34:18  22   All he knows is Arthur Longoria, sitting over here behind some

10:34:24  23   lawyers, next to lawyers, and "Tater's" roaming the streets free,

10:34:31  24   buying and selling guns, and who knows what he's up to because I

10:34:35  25   think that you got the idea, at least I hope so, that "Tater" was

10:34:38  1  not what we call a reliable, credible individual.  He didn't want

10:34:45  2  to admit he lied, but clearly he lied.  And the government says,

10:34:50  3  oh, well, he was just trying to help Arthur.  I don't think that

10:34:54  4  "Tater" -- you know, who knows, maybe he was.  But the point is

10:34:57  5  he lied.  "Tater" is here to help "Tater."  And "Tater" got

10:35:03  6  influenced, he got the message.  He may only be 23, but he's

10:35:07  7  street smart enough to get the idea when he's shown a photograph

10:35:10  8  of Arthur Longoria in a jail jumpsuit, oh, I get it, I get it, I

10:35:16  9  know what I'm supposed to do to get myself out of trouble and

10:35:23  10  keep myself out of trouble.  He may not have been the brightest

10:35:27  11  bulb in the chandelier, but I think even young "Tater" could

10:35:31  12  figure that out.

10:35:33  13          So you think you look at the -- you look at all the

10:35:44  14  evidence here.  The government's case rests on the foundation of

10:35:50  15  "Tater."  That's where their case really comes from.  That's the

10:35:55  16  most important part of their case is "Tater," and he's probably

10:35:58  17  the most unreliable foundation.  He's a foundation of sand.  The

10:36:04  18  government has not built their case, not built their house on a

10:36:09  19  solid foundation.  "Tater" can't be believed.

10:36:14  20          Now, yes, Mr. Longoria is in that residence and these

10:36:19  21  guns are there, so is Loretta.  Now if you notice, Detective

10:36:28  22  Balderama was questioning Mr. Longoria, he says, well, I think

10:36:33  23  that the shotgun was right next to you.  And Mr. Longoria said,

10:36:38  24  no, it was -- he says they were both in the safe.  As far as he

10:36:42  25  knew, they were both in the safe.  And in fact, if I understood

| | | |
|---|---|---|
| 10:36:46 | 1 | the officer's testimony, the shotgun is in the safe and the |
| 10:36:49 | 2 | .380's under the bed.  So the simple truth is, they were both |
| 10:36:52 | 3 | wrong about where the weapons were, where the firearms were. |
| 10:36:58 | 4 | But because -- I think what Mr. Longoria says on the |
| 10:37:03 | 5 | tape is, yeah, sometimes I'd go into the safe to get my papers |
| 10:37:07 | 6 | and I might -- you know, maybe he's having to push it away or do |
| 10:37:10 | 7 | this, do something like that to get to his stuff.  It's a gun |
| 10:37:14 | 8 | safe, a normal gun safe.  Would it have been better and smarter |
| 10:37:17 | 9 | for him not to have been anywhere on the same block with a |
| 10:37:21 | 10 | firearm?  Well, yeah, I think he understands that now. |
| 10:37:25 | 11 | But what are you going to say to people, what are you |
| 10:37:28 | 12 | going to say to the wives of people who have a prior felony |
| 10:37:30 | 13 | conviction, that is, any conviction for anything for which they |
| 10:37:34 | 14 | got over a year?  Are you going to say to them, ma'am, you can't |
| 10:37:39 | 15 | have a pistol?  You can't have a shotgun because we're going to |
| 10:37:44 | 16 | put your husband in a federal penitentiary if you've got one? |
| 10:37:47 | 17 | Well, that's basically what you'll be saying if you convict |
| 10:37:51 | 18 | Arthur Longoria. |
| 10:37:52 | 19 | I mean it's a problem.  It's a serious problem with the |
| 10:37:59 | 20 | kind of crime that we've got on the streets, people need some |
| 10:38:02 | 21 | protection in their homes.  And for Mr. Sparks to stand up here |
| 10:38:06 | 22 | and tell you, oh, well, he could have got a burglar alarm is |
| 10:38:13 | 23 | ridiculous.  I mean you might ought to have a burglar alarm, but |
| 10:38:26 | 24 | our Constitution guarantees the right to keep and bear arms, and |
| 10:38:29 | 25 | the Supreme Court recently reaffirmed that.  So anybody who's not |

10:38:34  1  convicted of a felony could have a firearm.

10:38:39  2          And he says, well, Loretta hadn't even learned how to

10:38:42  3  shoot it.  Well, I don't think it takes a whole lot of learning

10:38:46  4  to learn how to shoot a .380.  Maybe some, you should go to the

10:38:54  5  -- you know, that's -- they never went to the firing range.  She

10:38:58  6  never went to learn how to do it.  That's how interested they

10:39:01  7  were in these firearms or how interested he was.

10:39:05  8          Watch carefully Mr. Longoria's videotaped statement,

10:39:34  9  and if he, in fact, touched the .380, which is what he's charged

10:39:39  10 for, he shouldn't have done that.  He shouldn't probably have

10:39:44  11 gotten close to -- in order to keep himself out of any trouble so

10:39:48  12 he doesn't have to be here with lawyers.  But the officer, if I

10:39:54  13 recall the videotape, just asking about the firearms, and Arthur

10:40:03  14 said, yeah, I handled firearms.  And we don't really know if

10:40:05  15 that's the .380, which is what he's charged with, or a .410, or a

10:40:10  16 12-gauge, or a BB pistol, or what it all is.  I'm exaggerating a

10:40:14  17 little bit, but lawyers do that.

10:40:19  18          So when you go back in there and you look at all the

10:40:24  19 pieces of the picture puzzle that the government has tried to put

10:40:27  20 together for you, if you see some of the pieces don't fit

10:40:31  21 exactly, or some of them aren't the right color, then you need to

10:40:35  22 find Arthur Longoria not guilty.

10:40:41  23          We're not here to speculate him into the federal

10:40:45  24 penitentiary.  We're not here to -- the Judge told you beyond a

10:40:50  25 reasonable doubt and that's proof of a nature -- such a nature

10:40:52  1  that you would rely upon it without hesitance in the most

10:40:57  2  important of your own personal affairs.  So that means it's got

10:41:00  3  to be pretty serious evidence because we're not here to speculate

10:41:11  4  and say, well, you know what, I think he did it.  I think he

10:41:16  5  probably did it.  Well, if you think he probably did it and

10:41:20  6  that's it, it's your obligation to say "not guilty" because

10:41:26  7  probably did it is not proof beyond a reasonable doubt.  And I

10:41:35  8  don't think -- that's probably one of the few things that the

10:41:36  9  government is not going to argue with me about.

10:41:39  10        Now, in a little while, I'm going to sit down here, and

10:41:42  11  Ms. Douglas is going to get up here and speak, and I've known her

10:41:46  12  a long time in state and federal court and she's a good lawyer.

10:41:54  13  And I'm afraid she's going to talk you into or try -- I know

10:41:57  14  she's going to try and I hope she doesn't talk you into believing

10:42:00  15  that the government has proven their case beyond a reasonable

10:42:02  16  doubt.  And they want to win.  Lawyers -- we just want to win.

10:42:06  17  But it's up to you to look at this case and tell the lawyers

10:42:11  18  whichever, whether it's me or Mr. Sparks and Ms. Douglas, that

10:42:18  19  you're wrong, and I'm bolted to the other side based on the

10:42:22  20  evidence.

10:42:22  21        But I'm hoping that you won't just because Ms. Douglas

10:42:24  22  is eloquent and persuasive.  She's very good.  You could see her

10:42:29  23  down at the park over here, talking the bird down out of the

10:42:34  24  trees.  So I'm hoping y'all won't be a bunch of birds.  I know

10:42:39  25  you won't.

10:42:39  1    You know, y'all have really been a very good jury, been

10:42:42  2  very attentive.  I think y'all are really good and I'm not -- I

10:42:45  3  usually say that, but this time I really mean it.  So I'm proud

10:42:49  4  of y'all.  And I'm not proud of the government's case here.  I

10:42:52  5  think it amounts to proof less than proof beyond a reasonable

10:42:57  6  doubt.

10:43:04  7    Well, I'm going to sit down now.  And I'm sure as soon

10:43:06  8  as I sit down, which always happens, I think of the things that I

10:43:09  9  didn't think to say.  But you've got your 12 memories and you can

10:43:14  10  remember what all these witnesses said, and you look at it and

10:43:18  11  you decide.  You know, it's very serious stuff for Mr. Longoria.

10:43:23  12  And I do appreciate your time and your attention.  Thank you.

10:43:26  13    THE COURT:  Ms. Douglas.

10:43:28  14    MS. DOUGLAS:  Thank you.

10:43:29  15  GOVERNMENT'S CLOSING STATEMENTS

10:43:30  16    MS. DOUGLAS:  May it please the Court, Mr. Orr, Mr.

10:43:33  17  Crawford.

10:43:33  18    I will say this, Mr. Orr is a good boost for my ego.  I

10:43:39  19  appreciate all the compliments he's given me.  And I have the

10:43:41  20  most respect for Mr. Orr.  As he said, I've known him many years,

10:43:44  21  and he has an obligation to his client to do the best job he can

10:43:47  22  in defending him.  But I will respectfully disagree with him that

10:43:51  23  we both just want to win.

10:43:54  24    I want you all to return a verdict of guilty because I

10:43:57  25  believe the evidence has established that he's guilty.  I don't

| | | |
|---|---|---|
| 10:43:59 | 1 | just want to win for some notch on my belt.  That's not what I'm |
| 10:44:04 | 2 | here for.  I'm here to see that justice is served.  And justice |
| 10:44:07 | 3 | will be for you to return a verdict of guilty against Arthur |
| 10:44:10 | 4 | Longoria. |
| 10:44:13 | 5 | I'd like to address a few things that Mr. Orr said in |
| 10:44:16 | 6 | his closing argument to you, then I'm going to get to what I |
| 10:44:20 | 7 | believe the main focus should be.  He wants to say how artful and |
| 10:44:26 | 8 | crafty Jonathan Lee is.  You all can walk away with your own |
| 10:44:30 | 9 | impressions.  I don't find Jonathan Lee to be this artful, crafty |
| 10:44:34 | 10 | kind of gentleman.  He's made some poor choices in his life, but |
| 10:44:38 | 11 | the bottom line is when he came in here, he did attempt to |
| 10:44:42 | 12 | minimize Arthur Longoria's responsibility.  And what does that |
| 10:44:46 | 13 | tell you?  They were friends.  They were friends for the last two |
| 10:44:48 | 14 | to three years.  He sold him the firearm.  He didn't realize it |
| 10:44:52 | 15 | was against the law.  Arthur Longoria knows it's against the law |
| 10:44:56 | 16 | for him to possess a firearm. |
| 10:44:58 | 17 | And so, when he speaks with Detective Skolaut and he's |
| 10:45:01 | 18 | like, well, I sold it to him, it might have been for Loretta, but |
| 10:45:05 | 19 | he came and told you under oath, when I sold it to him, he gave |
| 10:45:09 | 20 | me the money, he took the firearms, nothing was ever said about |
| 10:45:13 | 21 | Loretta.  When's the first time something gets said about these |
| 10:45:15 | 22 | are a gift for Loretta?  You heard him tell you.  After Art's |
| 10:45:20 | 23 | house was raided, Arthur comes over to where he is at his Jiffy |
| 10:45:24 | 24 | Lube job and it's like, hey, do you think you can maybe tell them |
| 10:45:27 | 25 | it was for Loretta's birthday?  So take that for whatever you |

10:45:31  1  want, but the bottom line is, Jonathan Lee sold them to Arthur

10:45:37  2  Longoria, and they remained in his possession up until the raid

10:45:41  3  of his home in December for six months.  I believe he said her

10:45:45  4  birthday's in August so from August all the way through December.

10:45:48  5  So for four months.

10:45:51  6          He wants to talk about the constitutional rights of

10:45:53  7  Loretta.  That's fine and good.  Loretta made a choice.  And we

10:45:59  8  talked about that when we began this trial, when we did opening

10:46:02  9  statement, we make choices, choices have consequences, and we

10:46:06  10  have to accept our responsibility for them.  You didn't hear from

10:46:10  11  her that, oh-oh, I didn't know he was a convicted felon, none of

10:46:13  12  that.  So he's a convicted felon, he knows he can't possess a

10:46:17  13  firearm.  They're not able to have a firearm there that he's able

10:46:20  14  to have access to because I'll show you in the charge that the

10:46:24  15  Court gave you, nowhere does it say anything about ownership.  It

10:46:28  16  talks about possession.

10:46:30  17          So in Mr. Longoria's mind, he thinks if he says it's

10:46:34  18  Loretta's, then he gets a free pass.  But the law does not

10:46:37  19  indicate that in the Court's charge that Judge Sparks has given

10:46:45  20  you all the elements that we're required to prove.  And I would

10:46:48  21  submit to you when you go back in there, your job is somewhat

10:46:50  22  easy because this hasn't been a case that's been hotly contested

10:46:54  23  on, well, it's a case of mistaken identity, or this isn't really

10:46:58  24  a firearm, or any of those things.

10:47:00  25          So when you look through it -- and you'll have your

10:47:09  1    copy back there.  But I'm on page 6.  It talks about, first, that

10:47:14  2    the defendant knowingly possessed a firearm, specifically, a

10:47:17  3    Hi-Point, Model CF380, and it goes on with a serial number, and

10:47:22  4    it says before this possession, he has been convicted in court of

10:47:27  5    a felony.  He stipulated, so you don't even have to spend any

10:47:30  6    time thinking about that when you go back and deliberate.  That's

10:47:32  7    stipulated, that's a fact.  You can move on.

10:47:35  8         No. 3, that the possession of the firearm was affecting

10:47:38  9    commerce.  That's not been stipulated.  There's not been any

10:47:41  10   evidence that, no, this firearm was really manufactured at some

10:47:43  11   gunsmith here in Texas.  So the only thing you have to focus in

10:47:47  12   on is whether or not Mr. Longoria possessed this firearm.

10:47:59  13        I want you all to go look at that CD.  That's why it's

10:48:01  14   in evidence.  It's a whole 16 minutes.  Take some time and look

10:48:05  15   at it.  I've looked at it numerous times.  My interpretation of

10:48:08  16   it is a lot different than Mr. Orr's.  I don't believe that Mr.

10:48:16  17   Longoria's being truthful.  And these are my interpretations, but

10:48:20  18   when he's talking to the police officer about how these firearms

10:48:23  19   came into his possession, his words are, it was a gift for my

10:48:29  20   wife for her birthday.  Now, you all may not find that to be as

10:48:33  21   interesting as I do, but the way you word it, it was a gift, that

10:48:37  22   doesn't imply that wife purchased it.  That's just a commonsense

10:48:41  23   reading of those words.  If she had purchased it, he initially

10:48:44  24   would have been like, my wife bought that.  But why did she buy

10:48:46  25   them?  She bought them for her birthday.  That's just how I

10:48:49  1  interpret it.

10:48:50  2          So when the officer whose interpretation is the same as

10:48:53  3  mine says, oh, you bought them for your wife.  Then Mr. Longoria

10:48:57  4  realizes, oh-oh, I'm now putting those in my hands if I say I

10:49:01  5  bought them for her for her birthday.  So then he says, well, she

10:49:04  6  bought them for herself for her birthday.  So I just say that

10:49:08  7  when you're looking through it, look and see what he means when

10:49:11  8  he says the things he says and why he says them.

10:49:15  9          Then the next thing I find very interesting, look at

10:49:19  10  it, when the officer's trying to figure out how we find "Tater,"

10:49:22  11  why does Arthur Longoria think it's important to minimize that he

10:49:25  12  knows "Tater"?  Because he doesn't want the police officer to go

10:49:28  13  find him and confirm or refute the story that he's given.  He's

10:49:33  14  like, oh, maybe ten times.  I don't know how to reach him.  He

10:49:39  15  knew how to reach him when he wanted to go over there and talk to

10:49:41  16  him in March.  He went right to his place of employment.  You

10:49:44  17  didn't hear him tell the police officer, I don't know his number,

10:49:46  18  but I know he works at the Jiffy Lube off of Slaughter.

10:49:50  19          Why is he trying to hide later from the place?  Because

10:49:53  20  he knows "Tater's" not going to lie for him.  He knows that if

10:49:56  21  Tater's pinned out, he's going to tell that he sold the firearms

10:49:59  22  to Arthur Longoria.

10:50:01  23          And finally, Arthur Longoria tells you on that tape

10:50:07  24  that the guns were always in the safe.  Well, we know that's not

10:50:11  25  true, and we know it's not true because when the police raided

10:50:17　1　that home on December 4th, year 2007, they find the gun and these

10:50:24　2　pretty intimidating-looking knives.  I don't know Loretta, but

10:50:28　3　they want you to think she's this Angelina Jolie-type lady; she's

10:50:32　4　using guns and knives and she's protecting the home.  That just

10:50:36　5　flies in the face of reason and common sense.

10:50:43　6　　　　　I want to end my closing in talking to you about

10:51:03　7　choices.  The defendant took actions in his life that concluded

10:51:06　8　with him being a convicted felon.  Those are choices he's made,

10:51:09　9　he has to accept the responsibility for it.  He chose to purchase

10:51:13　10　two firearms from Jonathan Lee.  He knew he was a convicted

10:51:17　11　felon.  If he's really just being a great friend, no, I can't buy

10:51:20　12　your firearms to help you out with rent, but here, I'm going to

10:51:24　13　loan you 150, have at it.  He didn't have to take those firearms.

10:51:28　14　He chose to keep those firearms in the bedroom where he stayed.

10:51:32　15　　　　　His consequences as a convicted felon, that's one of

10:51:35　16　the rights you lose.  Once you become a convicted felon, you

10:51:38　17　never have the opportunity or a right to possess a firearm again.

10:51:43　18　He violated that law the minute he purchased those firearms.  The

10:51:47　19　minute he purchased them, he violated that law.  And you heard

10:51:50　20　from Agent Daniel Jones with ATF, Mr. Longoria knew he couldn't

10:51:55　21　go into Academy and say, I'd like to buy these for my wife for

10:51:58　22　her birthday.  I mean do we really think that convicted felons

10:52:01　23　won't come in and lie?  This isn't for me, it's for my wife for

10:52:04　24　her birthday.  Okay.

10:52:06　25　　　　　Responsibility.  To this day, he's not accepting

10:52:10   1   responsibility for his actions.  In the law it does not talk

10:52:19   2   about ownership because if it did, then every convicted felon

10:52:24   3   could circumvent the law.  And we talked a little earlier, I

10:52:27   4   think it was Mr. Orr, maybe some of the jurors, when we were

10:52:30   5   talking about loopholes or someone got up on the witness stand, I

10:52:32   6   remember that coming out.

10:52:33   7        But look through the charge.  It never says the

10:52:35   8   government has to establish whose gun it is, who's owning it.  It

10:52:39   9   talks about possession because, otherwise, the Longorias of the

10:52:43   10  world could say, okay, wife, go buy this gun at Academy, then

10:52:46   11  I'll have a bill of sale, I'll have documentation that it's your

10:52:49   12  firearm so we could have it at our house all day long.  I'll have

10:52:52   13  access to it, can do whatever I want to it, but if the police say

10:52:55   14  something, I'm like it's not my gun.  But that's not the law.

10:52:58   15  The law is possession.  And the Judge gives you a definition of

10:53:01   16  possession, whether it's on your person or your ability to

10:53:05   17  exercise control over it.

10:53:07   18       The defense argument, I wanted to address that because

10:53:12   19  I think it's somewhat, once again, of not taking responsibility.

10:53:16   20  We want to talk all about Jonathan Lee being this big-time gun

10:53:21   21  seller, like he's buying firearms, selling them.  He told you

10:53:24   22  seven or eight firearms over the course of two to three years

10:53:27   23  that he sold, trade, et cetera, or needed money for.  If he's

10:53:31   24  making 100, 150 at a pop, is that how you make a living for two

10:53:36   25  to three years?  It's not reasonable.

10:53:39  1         But we get back to responsibility.  Even if that's

10:53:44  2   true, how does that take away Arthur Longoria's responsibility

10:53:48  3   for purchasing the firearm?  He wants you look at everybody else

10:53:52  4   except for him.  And I would ask you not to allow him to shirk

10:53:57  5   his responsibility.  He's a convicted felon.  He's not allowed to

10:54:01  6   possession firearms, and the evidence has established that he

10:54:04  7   possessed a firearm from when Jonathan Lee sold it to him, all

10:54:08  8   the way until the police went to his home on December 4th, year

10:54:13  9   2007, and found him with that firearm.  I ask you to return a

10:54:17  10  verdict of guilty.  Thank you.

10:54:22  11        THE COURT:  Now, members of the jury, I'm going to

10:54:25  12  reverse myself and tell you it's time to talk about this case.

10:54:35  13  And I'll have the security officer, Mr. Hall, sworn, please.

10:54:42  14        THE CLERK:  Do you solemnly swear or affirm that you'll

10:54:47  15  keep this jury during their retirement in some convenient place,

10:54:50  16  removed from the presence of others; and that you will not

10:54:53  17  without leave of court allow anyone to speak to them; that you

10:54:56  18  will not without leave of court speak to them yourself except to

10:55:00  19  ascertain whether they have agreed upon their verdict and to

10:55:02  20  attend to their desire for necessities; that you will well and

10:55:06  21  faithfully discharge your duties of this court, so help you God?

10:55:10  22        COURT SECURITY OFFICER:  I will.

10:55:11  23        THE COURT:  Place you in Mr. Hall's custody.  When you

10:55:18  24  are through rendering a verdict, advise him, give him any

10:55:28  25  communication.  Ms. Juday, and, Mr. Stegman, y'all are alternate

| | | |
|---|---|---|
| 10:55:35 | 1 | jurors.  Do you have anything in the jury room?  Okay.  I'll have |
| 10:55:39 | 2 | you go in with them, get your personal articles.  We have to keep |
| 10:55:46 | 3 | you in a separate part, but you're still going to be there as a |
| 10:55:52 | 4 | juror.  And you will not talk with any of the jurors about this |
| 10:56:00 | 5 | case at the present time.  We'll have a special room for you to |
| 10:56:05 | 6 | sit and wait as the jury returns a verdict.  So why don't we take |
| 10:56:10 | 7 | them in and get their personal articles and then, take them back |
| 10:56:15 | 8 | out. |
| 10:56:16 | 9 |         All right.  All rise for the jury. |
| 10:56:43 | 10 |         (Jury retires to deliberate.) |
| 10:56:50 | 11 |         THE COURT:  Stay within contact with Mrs. Sims.  I do |
| 10:56:56 | 12 | not require you to stay in the courtroom, or stay in the |
| 10:57:01 | 13 | courthouse, but in the event there is any indication, you have to |
| 10:57:04 | 14 | be able to get here quickly.  So give her your cell numbers. |
| 11:37:32 | 15 |         (Recess.) |
| 11:37:57 | 16 |         THE COURT:  I've received jury note No. 1:  We've |
| 11:38:00 | 17 | selected a foreperson, Michael Bowers. |
| 11:38:04 | 18 |         And jury note No. 2:  We have come to a verdict. |
| 11:38:09 | 19 |         Bring them in. |
| 11:38:10 | 20 |         (Jury present.) |
| 11:39:04 | 21 | VERDICT |
| 11:39:04 | 22 |         THE COURT:  Has the jury come to a verdict? |
| 11:39:10 | 23 |         THE JUROR:  Yes, your Honor, we have. |
| 11:39:11 | 24 |         THE COURT:  Is it a unanimous verdict? |
| 11:39:12 | 25 |         THE JUROR:  Yes, sir. |

| | | |
|---|---|---|
| 11:39:13 | 1 | THE COURT:  Mrs. Sims will come get it.  Have you |
| 11:39:16 | 2 | signed it, sir? |
| 11:39:16 | 3 | THE JUROR:  Yes, sir. |
| 11:39:29 | 4 | THE COURT:  I'll have the clerk read the verdict. |
| 11:39:32 | 5 | THE CLERK:  Answer as to Question No. 1, guilty, signed |
| 11:39:40 | 6 | this 12th day of August, 2008, at 11:30 a.m., Michael Bowers, |
| 11:39:46 | 7 | presiding juror. |
| 11:39:47 | 8 | THE COURT:  Anybody want the verdict -- the jury |
| 11:39:50 | 9 | polled? |
| 11:39:51 | 10 | MS. DOUGLAS:  No, your Honor. |
| 11:39:53 | 11 | MR. ORR:  No, your Honor. |
| 11:39:54 | 12 | THE COURT:  Members of the jury, now I'm going to |
| 11:39:57 | 13 | release you from your confidentiality, which means that you could |
| 11:40:00 | 14 | talk about the case, if you want to, with anybody that you want |
| 11:40:03 | 15 | to.  It's America.  On the other hand, you also have the right |
| 11:40:07 | 16 | not to talk to anybody.  I always encourage the jurors if the |
| 11:40:10 | 17 | lawyers ask you a question to talk with them, but if you prefer |
| 11:40:14 | 18 | not, all you have to do is say, "I prefer not to talk about the |
| 11:40:17 | 19 | case." |
| 11:40:19 | 20 | I have from time to time jurors who get concerned about |
| 11:40:23 | 21 | being on a jury, but I could tell you that since 1963, when I've |
| 11:40:29 | 22 | been actively involved as a lawyer, and now as a judge for all |
| 11:40:32 | 23 | these years, I've never seen a single juror even bothered by |
| 11:40:39 | 24 | anybody in Texas.  Now, you read about it in California, but |
| 11:40:44 | 25 | everything goes on in California.  So I'm not responsible for |

| | | |
|---|---|---|
| 11:40:47 | 1 | that.  But if you don't want to talk about the case, you don't |
| 11:40:50 | 2 | have to, and just tell the lawyers you prefer not.  If the |
| 11:40:56 | 3 | lawyers ask you a question about what they did was good, or bad, |
| 11:40:59 | 4 | or anything like that, it doesn't hurt to get an objective |
| 11:41:04 | 5 | viewpoint from somebody who comes in and is a juror in the case, |
| 11:41:07 | 6 | but that's up to you. |
| 11:41:09 | 7 | I have one more administrative responsibility for you |
| 11:41:11 | 8 | and the alternate jurors in the jury room.  You'll be through in |
| 11:41:17 | 9 | about five minutes.  And you have the thanks of the Court for |
| 11:41:20 | 10 | this service.  And place you back in Mr. Hall's authority. |
| 11:41:52 | 11 | (Jury exits.) |
| 11:42:02 | 12 | THE COURT:  I'll accept the verdict, file it with the |
| 11:42:04 | 13 | clerk, and we'll set sentencing in this case for October 17th. |
| 11:42:09 | 14 | October 17th, Friday, at 9:00. |
| 11:42:11 | 15 | MR. ORR:  Yes, your Honor. |
| 11:42:12 | 16 | THE COURT:  Counsel, thank you for the professional way |
| 11:42:14 | 17 | that you treated the Court.  And you are excused. |
| | 18 | (End of proceedings.) |
| | 19 | |
| | 20 | |
| | 21 | |
| | 22 | |
| | 23 | |
| | 24 | |
| | 25 | |

```
1                        *  *  *  *  *  *

2

3

4    UNITED STATES DISTRICT COURT)

5    WESTERN DISTRICT OF TEXAS    )

6

7       I, LILY I. REZNIK, Official Court Reporter, United States

8    District Court, Western District of Texas, do certify that the

9    foregoing is a correct transcript from the record of proceedings

10   in the above-entitled matter.

11      I certify that the transcript fees and format comply with

12   those prescribed by the Court and Judicial Conference of the

13   United States.

14      WITNESS MY OFFICIAL HAND this the 23rd day of February, 2009.

15

16

17                            /s/Lily I. Reznik
                              LILY I. REZNIK, RPR, CRR
18                            Official Court Reporter
                              United States District Court
19                            Austin Division
                              200 W. 8th Street, 2nd Floor
20                            Austin, Texas 78701
                              (512)916-5564
21                            Certification No. 4481
                              Expires:  12-31-10
22

23

24

25
```